UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL & MARILYN NICOLETTE, | : |
|                Plaintiff, | : |
| | |
|               v. | |
| | : Civil Action No.: |
| MOTOR TRANSPORT AUTO RECOVERY; | : |
| JOHN DOES 1 and 2; | : |
| SANTANDER CONSUMER USA, INC., | : |
|                Defendants. | : |

## COMPLAINT

**A.   Jurisdiction and Venue**

1. Jurisdiction arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1337(a), together with the pendent jurisdiction of the court. Supplemental jurisdiction over Plaintiff's state law claims is granted by 28 U.S.C. § 1367(a). Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

2. Venue lies in this judicial district in that the defendants which are the subject of the action do the most significant amount of their business within this district.

**B.   Parties**

3. Plaintiff MARILYN NICOLETTE is a natural person who resides at 2354 Irish Hill Road, Montrose, PA 18801.

4. Defendant MTAR (Motor Transport Auto Recovery) is a Pennsylvania Corporation located at 2261 San Souci Parkway Wilkes Barre Pa 18702 and is engaged in the business of automobile repossession and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) for the reasons set forth below.

5. Defendant John Doe 1, is a natural person employed by Defendant MTAR as tow

driver and repossession/collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) for the reasons set forth below.

6.     Defendant John Doe 2, is a natural person employed by Defendant MTAR as tow driver and repossession/collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) for the reasons set forth below.

7.     Defendant, SANTANDER CONSUMER USA, INC. ("Santander") is a Texas corporation licensed to do business in the Commonwealth of Pennsylvania, that regularly does business in Philadelphia County, and that a registered agent for service in the Commonwealth being CT Corporation Systems, 116 Pine St., Ste. 320, Harrisburg, PA 17101. At all times relevant herein, Santander conducted business in the Commonwealth of Pennsylvania and in the County of Philadelphia buying retail sale installment contracts from approved motor vehicle dealers. At all times relevant, Santander, acting alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

8.     At the time defendant MTAR was engaged in the collection and repossession activities described herein, defendant MTAR and its agents, John Does 1 and 2, were each a debt collector as defined by 15 U.S.C. §1692a(6) insofar as:

  a)    Defendant uses a tow vehicle as an instrumentality of interstate commerce in its business the principal purpose of which is the enforcement of security interest.

  b)    Defendant breached the peace to effectuate a repossession and, in so doing, lost any present right to the collateral securing plaintiff's debt.

**C.    Factual Allegations**

9. Prior to the events hereinafter described, plaintiff purchased a 2003 Ford F350 Diesel truck., VIN #, by signing a Retail Installment Contract that was purchased by Santander [hereinafter "the debt"].

10. Plaintiff fell into arrears on the debt in late 2012 when plaintiffs had a dispute with Social Security over disability benefits now resolved.

11. On June 20, 2013, at approximately 3:48am, plaintiff Mrs. Nicolette was awoken by the sound of the tow vehicle and, upon rushing outside, noted a flatbed tow truck in her driveway.

12. Upon confronting John Doe 1, he told plaintiff he was there to repossess the vehicle.

13. Plaintiff stood against the back of the vehicle and told John Doe he was not taking the vehicle.

14. John Doe 1 then began screaming at plaintiff to get out of the way so that he could take it.

15. Plaintiff advised John Doe she needed the vehicle to drive back to the dentist in the morning because she had just gotten sixteen (16) teeth pulled twelve (12) hours before and was bleeding very badly.

16. John Doe 1 replied that plaintiff should call an ambulance to return to the dentist.

17. Plaintiff then instructed John Doe 1 to get off her property and John Doe 1 replied that he wasn't leaving without the vehicle.

18.   John Doe 1 and his helper, John Doe 2, started putting chains around the vehicle's rear end.

19.   Plaintiff again told John Doe 1 and John Doe 2 to get off the property because they were creating a disturbance.

20.   Plaintiff asked John Doe 1 to see the repossession paperwork and was told John Doe 2 had it.

21.   Plaintiff then asked John Doe 2 to see said paperwork which John Doe 2 refused and instead only provided plaintiff with a business card.

22.   John Doe 1 then yelled at plaintiff to get out of the way or he would call the police.

23.   Plaintiff responded that she did not care if John Doe 1 called the police because John Does 1 and 2 are creating a disturbance and to drop her car.

24.   John Doe 1 told plaintiff that she watched too many repo shows on TV.

25.   Plaintiff's husband then came outside and, upon observing MTAR dragging the truck out of the carport, gave John Does the key in order to keep the vehicle's 4 wheel drive from getting damaged.

26.   Despite having the keys, John Doe 2 spitefully continued to winch rather than drive the vehicle onto the flatbed and departed.

27.   On or about June 28, 2013, Plaintiff paid to Santander $3,670.00 to redeem the vehicle and then, on July 2, 2013, was forced to drive approximately 150 miles to pick up the vehicle at Manheim Auto Auction in Bordentown, New Jersey.

28.   Upon inspecting the vehicle at Manheim, plaintiff and her husband noted

that the following regarding the vehicle's condition:

    a) visible damage on the front and rear bumpers

    b) interior of the truck contained garbage, including a chocolate pudding cup with the plastic spoon in it, CD's thrown on the seat and floor, and blood on the driver's door panel;

    c) the rear pass thru window from the backseat of the truck into the camper cab was wide open allowing rain into the back seat of the truck and into the camper;

    d) the rear sliding windows were wide open with the screens ripped apart and cut;

    e) black tool type box open in the bed of the truck with contents gone.

29. Manheim's Security Guard advised plaintiff that they would never leave windows open in a vehicle and that the tow company must have done so.

30. Plaintiff then reported the damage to the vehicle to Santander. Pictures were taken when vehicle was redeemed at Manheim by us.

31. On or about July 3, 2013, plaintiff went to MTAR's location to retrieve her personal belongings removed from the vehicle by MTAR.

32. MTAR presented plaintiff's husband with a document to sign, entitled "release", which read to the effect that, by signing, plaintiff would hold harmless MTAR and their agents from any actions they undertook in the towing and repossession of the vehicle.

33. Plaintiff's husband at first refused to sign the document, but, upon being

told that MTAR would not otherwise release her property, wrote on the document before her signature, "I DO NOT agree with the above and that any signing of this document is not to release them from anything.

34. The MTAR employee Jane Doe then delivered the property back to plaintiffs stating "if you paid your bills we wouldn't be here" after which she dropped a black garbage bag at plaintiffs' feet without providing an inventory list.

35. Plaintiff then told Jane Doe of the damages caused to the truck by MTAR's repossession whereupon Jane Doe called plaintiff a liar.

36. At all times herein, the individual collectors acted within the knowledge and direction of defendants and their actions as agents are imputed to their principal, Santander, thereby.

37. Throughout the collection process described above, as a direct and proximate result of Defendant MTAR's actions in harassing, oppressing, and abusing Plaintiff, Plaintiff has suffered actual damages in the form of emotional distress, anxiety, embarrassment, fear, and sleeplessness, among other negative emotions.

38. The actions of defendants as before described were performed by their respective agents, officers, and employees within the scope of their actual or apparent authority.

**D.    Cause of Action**

### COUNT I – Violations of the FDCPA
### (Defendants MTAR and John Does 1 & 2)

39. The allegations above are re-alleged and incorporated herein by reference.

40. At all times relevant hereto Defendants MTAR and John Does 1 & 2 were attempting to collect an alleged debt to it which was incurred for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

41. The aforesaid Defendants, by their conduct as described above, violated the FDCPA as follows:

   a) §1692d, By its words and actions having engaged in conduct the natural consequence of which is to harass, oppress, or abuse a person;

   b) §1692d1 by threatening to harm plaintiff's property;

   c) §1692d2 by using profane or abusive language;

   d) §1692e(7) by engaging in conduct to disgrace the debtor by its public actions in breach of the peace as described above;

   e) §1692f, By unfairly and unconscionably collecting or attempting to collect the debt by its actions described above;

### COUNT II - Violation of U.C.C.
### (All Defendants)

36. The allegations above are re-alleged and incorporated herein by reference.

37. The vehicle repossessed by defendants which is collateral for the debt falls within the definition of "consumer goods" contained in 13 Pa. C.S.A. § 9109. The transaction in question was a consumer-goods transaction in that plaintiff incurred the obligation primarily for personal, family or household purposes, and the collateral was consumer goods.

38. In the course of the transaction with plaintiff, Creditor defendants violated the provisions of Article 9, Part 6 of the U.C.C., including, but not limited to committing a breach of the peace in repossessing the Vehicle in violation of 13 Pa. C.S.A. § 9503 by harassing,

oppressive and abusive behavior described above such as abusive language and threatening harm to plaintiff's vehicle in front of neighbor's which is an affront to public order.

39.     Whether repossession of plaintiff's car was lawful or not, SANTANDER was required to conduct sale of the Vehicle in a "commercially reasonable" manner, 13 Pa. C.S.A. §9607(c), 13 Pa. C.S.A. §9610.

40.     These U.C.C. violations caused plaintiff actual damages in the amount of the vehicle's value at the time of repossession and, in the alternative, statutory damages under Pa. C.S.A. 13 § 9507.

## COUNT III
## VIOLATIONS OF THE FAIR CREDIT EXTENSION UNIFORMITY ACT(FCEUA)
## 73 P.S. § 2270.1 et. seq.
## AND THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (UTPCPL)
## 73 P.S. § 201-1 et. seq.
## (Plaintiff v. All Defendants)

41.     The allegations above are re-alleged and incorporated herein by reference.

42.     Defendant Santander is a "creditor" and the remaining defendants are "debt collectors" as defined by 73 P.S. § 2270.4 of the FCUEA.

43.     Plaintiff is a "consumer" as defined by 73 P.S. § 2270.4 of the FCUEA.

44.     Insofar above described breaches of the peace by John Does 1 and 2 terminated Santander's present right of possession of the car as collateral, then Santander had no right to the vehicle's possession insofar as the purchase contract does not allow repossession of the vehicle in breach of the peace.

45.     Insofar as the aforesaid breaches of the peace described above terminated its present right of possession of the vehicle as collateral, then Santander had no right to its

possession insofar as the purchase contract does not allow repossession of the vehicle in breach of the peace.

46. As a result of the wrongful taking of the vehicle by defendants, plaintiff has lost the use and enjoyment and value of the vehicle.

47. All of the above contacts by Defendants were "communications" relating to a debt as defined by 73 P.S. § 2270.3 of the FCUEA.

48. The foregoing acts and omissions of these Defendants constitute numerous and multiple violations of the FCEUA and UTPCPL, including but not limited to 73 P.S. § 2270.4(a), as evidenced by the following conduct:

   a) Engaging in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt;

   b) The use of unfair or unconscionable means to collect or attempt to collect an alleged debt;

   c) Attempting to collect any amount not authorized by agreement or permitted by law.

49. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiffs' rights under the law with the purpose of coercing Plaintiffs to pay the debt.

50. As a result of the above violations of the FCUEA and UTPCPL, Plaintiff has suffered ascertainable loss in the value of the vehicle entitling him to an award of statutory, actual and treble damages and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendants for the following:

A. Statutory damages pursuant to 15 U.S.C. § 1692k;

B. Actual damages for emotional distress;

C. Damages under the U.C.C. as described herein;

D. Treble and punitive damages under the UTPCPL;

E. Reasonable attorney fees and costs under the FDCPA and UTPCPL.

F. Such other and further relief as the Court shall deem just and proper.

## TRIAL BY JURY

51. Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7. Fed. R. Civ. Pro. 38.

Dated: September 19, 2013

RC 935
By: Robert P. Cocco, Esquire
Pa. Id. No. 61907
1500 Walnut Street, Suite 900
Philadelphia, PA 19102
215-351-0200

BENSLEY LAW OFFICES, LLC
William Bensley, Esquire
**Identification No.:**
1500 Walnut Street - Suite 900
Philadelphia, PA 19102
(267) 322-4000
Attorneys for Plaintiff